1  LAURA E. DUFFY
   United States Attorney
2  EMILY J. KEIFER
   Assistant U.S. Attorney
3  California Bar No.: 271107
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101
5  Tel: (619) 546-7319
   Fax: (619) 546-0510
6  Email:  Emily.Keifer@usdoj.gov

7  Attorneys for the United States

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  UNITED STATES OF AMERICA, | Case No.: 13CR2314-AJB |
| 11             Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS** |
| 12       v. | **TO:** |
| 13  JUAN CABRERA, | **(1)   COMPEL DISCOVERY** |
|   | (2)   **FILE FURTHER MOTIONS** |
| 14             Defendant | |

15

16       The plaintiff, UNITED STATES OF AMERICA, by and through its

17  counsel, Laura E. Duffy, United States Attorney, and Emily J.

18  Keifer, Assistant United States Attorney, hereby files its Response

19  and Opposition to Defendant=s Motions to (1) Compel Discovery; and

20  (2) for Leave to File Further Motions.

21                          **I**

22                  **STATEMENT OF FACTS**

23       On May 28, 2013, at approximately 8:00 p.m., a Border Patrol

24  sensor device was activated in an area known as "Clear Water,"

25  approximately 400 yards north of the U.S./Mexico border and two

26  miles west of the San Ysidro, California, Port of Entry.   Border

27  Patrol Agent Jacinto Enriquez responded to the area and observed an

28  individual run north and jump into some brush.   Agent Enriquez

1 identified himself as a Border Patrol Agent and questioned the

2 individual about his citizenship.  The individual, later identified

3 as defendant, admitted that he was a citizen and nation of Mexico,

4 that he illegally crossed into the United States earlier that day,

5 and that he did not have documents that would allow him to enter or

6 remain in the United States.

7     Defendant was transported to the Imperial Beach Border Patrol

8 Station for processing and was advised of his Miranda rights at

9 12:09 a.m., approximately four hours after his arrest.  After

10 waiving his Miranda rights, defendant again admitted that he was a

11 citizen and national of Mexico and stated that he did not have any

12 documents that would him to legally enter or remain in the U.S.

II

**STATEMENT OF THE CASE**

15     On June 25, 2013, defendant agreed to waive indictment and was

16 arraigned on an Information that charged him with one count of

17 Attempted Reentry in violation of 8 U.S.C. § 1326(a) and (b).

III

**RESPONSE IN OPPOSITION**

20 **A.   MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

21     The United States intends to comply fully with its discovery

22 obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks

23 Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal

24 Procedure.  To date, the United States has provided 95 pages of

25 discovery, including the report of investigation, defendant's rap

26 sheet, documents related to the defendant's prior convictions,

27 defendant's pertinent immigration removal documents, dispatch tapes

28

2

1 from the date of arrest, and a DVD of the defendant's post-arrest

2 statements.    Defendant's   specific   requests   for   discovery   are

3 addressed below.

4      **(1) The Defendant=s Statements**

5      The   United   States   recognizes   its   obligation   under   Rule

6 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance

7 of Defendant=s oral and written statements.   The United States has

8 produced  or  will  produce  all  of  Defendants'  oral  and  written

9 statements   that   are   known   to   the   undersigned   Assistant   U.S.

10 Attorney at this date, including the audio recording of defendant's

11 deportation proceedings.   If the United States discovers additional

12 written  or  oral  statements  that  require  disclosure  under  Rule

13 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided

14 to Defendant.

15      **(2) Arrest Reports, Notes and Dispatch Tapes**

16 The United States has provided Defendant with all known reports and

17 dispatch tapes related to Defendant's arrest in this case that are

18 available at this time.   The United States will continue to comply

19 with  its  obligation  to  provide  Defendant  all  reports  subject  to

20 Rule 16.

21      The   United   States   does   not   object   to   preserving   the

22 handwritten notes taken by any of the agents and officers.   <u>See</u>

23 <u>United  States  v.  Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976)

24 (agents must preserve original notes of interviews of an accused or

25 prospective  government  witness).     However,  the  United  States

26 objects to providing Defendant with a copy of the rough notes at

27 this time.    Rule  16(a)(1)(A)  does  not  require  disclosure  of  the

28

*13cr2314-AJB*

1   rough notes where the content of those notes have been accurately

2   reflected in a typewritten report.  See United States v. Brown, 303

3   F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573,

4   583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure

5   of an agent=s notes even where there are "minor discrepancies"

6   between the notes and the report).  The United States is not

7   required to produce rough notes pursuant to the Jencks Act, because

8   the notes do not constitute "statements" (as defined in 18 U.S.C. §

9   3500(e)) unless the notes (1) comprise both a substantially

10  verbatim narrative of a witness= assertion, and (2) have been

11  approved or adopted by the witness.  United States v. Spencer, 618

12  F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do

13  not constitute "statements" under the Jencks Act.  See United

14  States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough

15  notes were not statements under the Jencks Act where notes were

16  scattered and all the information contained in the notes was

17  available in other forms).  The notes are not Brady material

18  because the notes do not present any material exculpatory

19  information, or any evidence favorable to Defendant that is

20  material to guilt or punishment.  Brown, 303 F.3d at 595-96 (rough

21  notes were not Brady material because the notes were neither

22  favorable to the defense nor material to defendant=s guilt or

23  punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994)

24  (mere speculation that agents' rough notes contained Brady evidence

25  was insufficient).  If, during a future evidentiary hearing,

26  certain rough notes become discoverable under Rule 16, the Jencks

27  Act, or Brady, the notes in question will be provided to Defendant.

28

4

1  Absent any showing of specific relevance and discoverable
2  value, or that the information is exculpatory, the remainder of
3  Defendant's motion should be denied.

4  **(3) Reports of Scientific Tests or Examinations**

5  The United States will comply with its obligations pursuant to
6  Federal Rule of Criminal Procedure 16(a)(1)(F).

7  **(4) Brady Material**

8  The United States has and will continue to perform its duty
9  under Brady to disclose material exculpatory information or
10  evidence favorable to Defendant when such evidence is material to
11  guilt or punishment.   The United States recognizes that its
12  obligation under Brady covers not only exculpatory evidence, but
13  also evidence that could be used to impeach witnesses who testify
14  on behalf of the United States.   See Giglio v. United States, 405
15  U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77
16  (1985).   This obligation also extends to evidence that was not
17  requested by the defense.   Bagley, 473 U.S. at 682; United States
18  v. Agurs, 427 U.S. 97, 107-10 (1976).   "Evidence is material, and
19  must be disclosed (pursuant to Brady), 'if there is a reasonable
20  probability that, had the evidence been disclosed to the defense,
21  the result of the proceeding would have been different.'" Carriger
22  v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).   The final
23  determination of materiality is based on the "suppressed evidence
24  considered collectively, not item by item."   Kyles v. Whitley, 514
25  U.S. 419, 436-37 (1995).

26  Brady does not, however, mandate that the United States open
27  all of its files for discovery.   See United States v. Henke, 222

28

5

*13cr2314-AJB*

F.3d 633, 642-44 (9th Cir. 2000) (per curiam).   Under Brady, the United States is not required to provide:  (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380, 389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over.  (See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does Brady require the United States "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the United States "supply a defendant with exculpatory information of which it is aware."   United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").

### (5) Information that May Lead to Lower Sentence

The United States is not required to provide information bearing on defendant's mitigation of punishment until after defendant's conviction or plea of guilty and prior to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").   The United States remains mindful of its Brady

6

*13cr2314-AJB*

obligations and will produce any information that would support defendant's mitigation claims before sentencing.

**(6) Defendant's Prior Record**

The United States has provided Defendant with a copy of his criminal records in the United States' possession in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(7) Proposed 404(b) Evidence**

The United States will provide Defendant with official notice of its proposed use of any 404(b) evidence and information about such bad act at the time the United States' trial memorandum is filed. The United States reserves the right to introduce as prior act evidence any conviction, arrest, or prior act that is disclosed to the defense in discovery.

**(8) & (9) Evidence Seized/Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that are within its possession, custody, or control, and that are either material to the preparation of Defendant=s defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**(10) & (11) Evidence of Bias or Motive to Lie/Impeachment Evidence**

7

*13cr2314-AJB*

1    The United States will comply with its obligations to disclose

2 impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150

3 (1972).   The United States recognizes its obligation to provide

4 information related to the bias, prejudice or other motivation of

5 United States' trial witnesses as mandated in <u>Napue v. Illinois</u>,

6 360 U.S. 264 (1959).   The United States will provide such

7 impeachment material in its possession, if any exists, at the time

8 it files its trial memorandum, although it is not required to

9 produce such material until after its witnesses have testified at

10 trial or at a hearing.  <u>See United States v. Bernard</u>, 623 F.2d 551,

11 556 (9th Cir. 1979).

12    The United States objects to defendant's overbroad request for

13 any evidence that any prospective government witness has engaged in

14 any criminal act, whether or not resulting in a conviction.   The

15 United States will comply with <u>United States v. Henthorn</u>, 931 F.2d

16 29 (9th Cir. 1991), and request that all federal agencies involved

17 in the criminal investigation and prosecution review the personnel

18 files of the federal law enforcement inspectors, officers, and

19 special agents whom the United States intends to call at trial and

20 disclose information favorable to the defense that meets the

21 appropriate standard of materiality.  <u>United States v. Booth</u>, 309

22 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u> <u>United States v. Jennings</u>,

23 960 F.2d 1488, 1489 (9th Cir. 1992)).   If the undersigned is

24 uncertain whether certain incriminating information in the

25 personnel files is "material," the information will be submitted to

26 the Court for an in camera inspection and review.

27

28

*13cr2314-AJB*

1   The United States will utilize its typical practice for review
2   of these files, which involves requesting designated
3   representatives of the relevant agencies to conduct the review.

5   **(12) Evidence of Criminal Investigation of Any Government Witness**

6   The United States objects to Defendant's overbroad request for
7   evidence of criminal investigations by federal, state, or local
8   authorities into prospective government witnesses.  The United
9   States is unaware of any rule of discovery or Ninth Circuit
10  precedent that entitles Defendant to any and all evidence that a
11  prospective government witness is under investigation by federal,
12  state or local authorities.  Moreover, as discussed above, the
13  United States has no obligation to disclose information not within
14  its possession, custody or control.  See United States v. Gatto,
15  763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941
16  F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files
17  outside of federal prosecutor's possession); United States v.
18  Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal
19  government had no duty to obtain from state officials documents of
20  which it was aware but over which it had no actual control); cf.
21  Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act
22  refers to "any statement" of a witness produced by United States
23  which is in possession of United States and does not apply to a
24  recording in possession of state authorities).

25  The United States recognizes and will comply with its
26  obligations under the rules of discovery and Ninth Circuit
27  precedent to disclose exculpatory and impeachment information.

28

*13cr2314-AJB*

**(13) Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(14) Witness Addresses**

The United States has provided defendant with the reports that contain the names of agents involved in the apprehension and interviews of the defendant.  Although not required in non-capital cases, in its trial memorandum, the United States will provide the defendant with a list of all witnesses whom it intends to call in its case-in-chief.  See United States v. W.R. Grace, 526 F.3d 499, 510-11 (9th Cir. 2008) (en banc) (stating that while Rule 16 does not mandate the disclosure of non-expert witnesses, the district court has the authority to order the United States to produce a witness list pretrial).  While the United States has agreed to disclose a list of its witnesses in its trial memorandum, we object to the disclosure of witness' addresses.

The Ninth Circuit addressed this issue in United States v. Jones, 612 F.2d 453 (9th Cir. 1979).  In Jones, the Court made it clear that, absent a showing of necessity by the defense, there should be no pretrial disclosure of the identity of United States witnesses.  Id. at 455.  Several other Ninth Circuit cases have reached the same conclusion.  See, e.g., United States v. Armstrong, 621 F.2d 951, 1954 (9th Cir. 1980); United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980); United States v. Paseur, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not

10

1 entitled as a matter of right to the name and address of any

2 witness.").

3        **(15) Name of Witnesses Favorable to Defense**

4        The United States will to continue to comply with its

5 obligations pursuant to Brady.

6        **(16) Statements Relevant to the Defense**

7        The United States will comply with its discovery obligations.

8 See United States v. Bailleaux, 685 F.2d 1105, 1114 (9th Cir. 1982)

9 (scope of discovery includes a "statement made by the defendant

10 that may be relevant to any possible defense or contention that the

11 defendant might assert") (emphasis added).

12       **(17) Jencks Act Material**

13       The United States will comply with its discovery obligations

14 under the Jencks Act.   For purposes of the Jencks Act, a

15 "statement" is (1) a written statement made by the witness and

16 signed or otherwise adopted or approved by him, (2) a substantially

17 verbatim, contemporaneously recorded transcription of the witness=

18 oral statement, or (3) a statement by the witness before a grand

19 jury. See 18 U.S.C. § 3500(e).   Notes of an interview only

20 constitute statements discoverable under the Jencks Act if the

21 statements are adopted by the witness, as when the notes are read

22 back to a witness to see whether or not the government agent

23 correctly understood what the witness said.   United States v.

24 Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v.

25 United States, 425 U.S. 94, 98 (1976)).   In addition, rough notes

26 by a government agent "are not producible under the Jencks Act due

27

28

*13cr2314-AJB*

1 to the incomplete nature of the notes." United States v. Cedano-
2 Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

3      Production of this material need only occur after the witness
4 making the Jencks Act statements testifies on direct examination.
5 See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994).
6 Indeed, even material that is potentially exculpatory (and
7 therefore subject to disclosure under Brady) need not be revealed
8 until such time as the witness testifies on direct examination if
9 such material is contained in a witness's Jencks Act statements.
10 See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).
11 Accordingly, although the United States anticipates providing most,
12 if not all, Jencks material well in advance of trial, it reserves
13 the right to withhold Jencks statements of any particular witness
14 it deems necessary until after they testify.

15      **(18) Giglio Information**

16      The United States will comply with its obligations to disclose
17 impeachment evidence under Giglio v. United States, 405 U.S. 150
18 (1972).  The United States has not made any statements or promises
19 to any witness in exchange for his or her testimony in this case
20 and does not anticipate doing so in this case.

21

22      **(19) Personnel Records of Government Officers Involved in
Arrest**

23      The United States objects to Defendant's request for all
24 citizen complaints, and internal affair inquiries into the
25 inspectors, officers, and special agents who were involved in this
26 case, regardless of whether the complaints or inquiries are
27 baseless or material and regardless of whether the United States
28

12

1  intends to call inspectors, officers, and special agents to

2  testify.  As previously noted, the United States will comply with

3  Henthorn and disclose to Defendant all material incriminating

4  information regarding the testifying inspectors, officers, and

5  special agents.

6     **(20) Government Examination of Law Enforcement Personnel Files**

7     The United States will comply with United States v. Henthorn,

8  931 F.2d 29 (9th Cir. 1991), and request that all federal agencies

9  involved in the criminal investigation and prosecution review the

10 personnel files of the federal law enforcement inspectors,

11 officers, and special agents whom the United States intends to call

12 at trial and disclose information favorable to the defense that

13 meets the appropriate standard of materiality.  United States v.

14 Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v.

15 Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the undersigned

16 is uncertain whether certain incriminating information in the

17 personnel files is "material," the information will be submitted to

18 the Court for an in camera inspection and review.

19    The United States will utilize its typical practice for review

20 of these files, which involves requesting designated

21 representatives of the relevant agencies to conduct the review.

22    The United States objects to Defendant's request for all

23 complaints filed against the agents who were involved in this case,

24 regardless of whether the complaints or inquiries are baseless or

25 material and regardless of whether the United States intends to

26 call inspectors, officers, and special agents to testify.  As

27 previously noted, the United States will comply with Henthorn and

28

13

disclose to Defendant all material incriminating information regarding the testifying inspectors, officers, and special agents.

**(21) Expert Witnesses and Expert Summaries**

The United States will comply with its obligations pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

**C.    MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to granting leave to file further motions if the motion is based on new discovery.

**IV**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that the Court deny Defendant's motions, except where unopposed.

DATED:November 10, 2013        Respectfully submitted,

LAURA E. DUFFY
United States Attorney


/s/ Emily J. Keifer
EMILY J. KEIFER
Assistant United States Attorney

14

1

2

3

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

4

5

6

7

8

9

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>JUAN CABRERA,<br><br>       Defendant. | Case No.: 13CR2314-AJB<br><br>**CERTIFICATE OF SERVICE** |

10

11

12

    I, Emily J. Keifer am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

13

14

15

16

17

    I am not a party to the above-entitled action.  I have caused service of the Response in Opposition to Defendant's Motion to Compel Discovery on the following party by electronically filing the foregoing with the Clerk of the U.S. District Court for the Southern District of California using its ECF System.

18

    1.  Gary Burcham, Esq.

19

    I declare under penalty of perjury that the foregoing is true and correct.

20

    Dated:  November 12, 2013.

21

                     *s/ Emily J. Keifer*
                     EMILY J. KEIFER

22

                     Assistant U.S. Attorney

23

24

25

26

27

28

*13cr2314-AJB*